UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**JIN YANG**,

Plaintiff,

v.

**DISTRICT OF COLUMBIA**, *et al.*,

Defendants.

Case No. 1:25-cv-03350 (TNM)

## MEMORANDUM ORDER

Plaintiff Jin Yang brings this pro se action against the District of Columbia and unnamed officers of the Metropolitan Police Department ("MPD").  Compl., ECF No. 1. Her lawsuit stems from a September 2022 incident outside the Chinese Embassy.  *Id.* ¶¶ 1–2.  According to Yang, she was filming a documentary on a public sidewalk outside the Embassy when several MPD officers arrested her with excessive force, causing her "catastrophic and life-altering injuries."  *Id.* ¶¶ 15–23.  Yang sues the unnamed officers under 42 U.S.C. § 1983, asserting one First Amendment count and two Fourth Amendment counts.  *Id.* ¶¶ 30–41.  She also advances one claim of municipal liability against the District of Columbia.  *Id.* ¶¶ 42–46.  The District moves to dismiss the claim against it.  Mot. to Dismiss, ECF No. 9.  The Court grants that motion in part:  It dismisses Yang's claim but will direct her to file an amended complaint.

### I.

In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the plaintiff "state[s] a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The Court must "treat the complaint's

1

factual allegations as true and must grant the plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up).  But the Court need not "accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Courts hold pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  But even pro se litigants must comply with the Federal Rules of Civil Procedure.  *See Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).

## II.

Yang's sole claim against the District is for municipal liability under *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978).  As currently pled, it does not survive dismissal.

Evaluating a *Monell* claim is "a two-step inquiry." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  "First, the court must determine whether the complaint states a claim for a predicate constitutional violation." *Id.*  "Second, if so, then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation." *Id.*  To prevail on the second prong, Yang must plausibly allege "(1) an official policy explicitly adopted by D.C., (2) actions by a D.C. policymaker with final decision-making authority, (3) repeated behavior by D.C. municipal employees that have reached the level of a custom, or (4) a failure to act by D.C. that shows deliberate indifference to the potential for such violations." *See Givens*

*v. Bowser*, 111 F.4th 117, 122 (D.C. Cir. 2024) (cleaned up); *see also Baker*, 326 F.3d at 1306–07.

Yang puts forward two theories of municipal liability: one sounding in custom, the other in failure to train. Compl. ¶¶ 44–45. Neither cuts the mustard.

Yang first alleges that "the District of Columbia has a persistent and widespread custom of deferring to the security demands of the Chinese Embassy, even when such deference requires its MPD officers to violate the constitutional rights of U.S. citizens on public land." *Id.* ¶ 44. To back up that claim, Yang points to MPD's alleged actions against two other individuals: (1) Xiulin Cai, who "endured four separate arrests by MPD officers merely for the act of transiting on the public sidewalk past the Embassy" after receiving a five-year barring notice; and (2) Shuguang Chen, who received a five-year barring notice for "maintain[ing] a peaceful protest encampment in the public park across the street from the Embassy" and whom MPD officers later arrested "on two occasions simply for observing the Embassy building from across the public street." *Id.* ¶ 13 (emphasis omitted).

Yang's custom theory has two key defects. *First*, it does not plausibly state a "predicate constitutional violation." *See Baker*, 326 F.3d at 1306. Yang gestures toward MPD's "custom of deferring to the security demands of the Chinese Embassy." Compl. ¶ 44. That claim lacks grounding in any concrete constitutional violation. Yang pleads First and Fourth Amendment violations against the unnamed MPD officers, *see id.* ¶¶ 30–41, but she does not sufficiently link those violations to the District of Columbia's purported custom. That alone dooms her claim.

3

*Second*, Yang does not provide enough factual content to support any custom. Standing alone, her two examples do not suffice. *See Tafler v. District of Columbia*, 539 F. Supp. 2d 385, 392 (D.D.C. 2008) ("To support a finding of municipal liability, a policy or custom must be pervasive."). The Complaint's sparse facts do not show that those other individuals' experiences—even if each involved multiple occurrences—are sufficiently analogous to Yang's case to establish a custom. Only one of the examples discusses any First Amendment activity, and neither mentions excessive force. *See* Compl. ¶ 13.[1] Without more, Yang cannot state a plausible *Monell* claim—especially in the absence of a constitutional anchor. *See Marsh v. District of Columbia*, No. CV 24-683 (RDM), 2026 WL 836281, at *6 (D.D.C. Mar. 26, 2026) ("More than a single prior incident, which involved someone who (unlike Plaintiff) actually possessed a gun . . . ; a second incident that the complaint characterizes as 'similar' but without including any detail . . . ; and a series of wholly conclusory allegations . . . is required plausibly to allege that Plaintiff's unlawful stop was attributable to a broader District custom that carried the force of law.").

Yang's second *Monell* theory fares no better. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (footnote omitted). To "establish a pattern

---

[1] Yang also gestures toward one incident in New York City, *see* Compl. ¶ 14, but that one does not count because it did not involve MPD or the District. *See Givens*, 111 F.4th at 122.

giving rise to deliberate indifference," Yang must plead "other asserted violations" that "have materially similar legal implications so as to put the municipality on notice of the probability of future constitutional violations." *See Hurd v. District of Columbia*, 997 F.3d 332, 340 (D.C. Cir. 2021).

Yang falls short of that standard, even at the dismissal stage. She asserts that "[t]he District of Columbia was deliberately indifferent to the obvious need to train its MPD officers on specific, recurring issues at the Chinese Embassy." Compl. ¶ 45. But the alleged previous incidents at the Embassy can no better sustain Yang's failure-to-train claim than her custom claim. As currently pled, those examples are too dissimilar to establish deliberate indifference. *See Marsh*, 2026 WL 836281, at \*7 ("*Ipse dixit* assertions that the need for proper training was obvious, . . . linked only to one previous incident (or perhaps two incidents) of alleged unlawful behavior by MPD officers, do not meet Plaintiff's burden of plausibly alleging that the District was on notice of a substantial risk of future unconstitutional injury . . . ." (cleaned up)).

Although Yang's Complaint does not state a plausible *Monell* claim, the Court will give her another chance to plead one. In her opposition to the motion to dismiss, Yang previews various "proposed amendments" that she maintains "would materially strengthen plausibility"—including more details concerning the previous incidents outside the Embassy, as well as a copy of "the written five-year barring notice served on [her]." Pl.'s Opp'n, ECF No. 11, at 12. The Court takes no position on whether those additions would clear the plausibility hurdle; it concludes merely that leave to amend is warranted at this early stage. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (ruling that leave to amend should be "freely given" absent "undue delay, bad faith or dilatory motive

5

on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment" (cleaned up)); *see also Moore v. Agency for Int'l Devel.*, 994 F.2d 874, 877 (D.C. Cir. 1993) (stating that "leave to amend is particularly appropriate when a plaintiff proceeds pro se"). Thus, while the Court dismisses Count IV without prejudice, it will direct Yang to file an amended complaint within one month from the date of this Order.[2]

For these reasons, it is hereby

**ORDERED** that the District of Columbia's [9] Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED** that Count IV of Plaintiff's [1] Complaint is **DISMISSED** without prejudice; and it is further

**ORDERED** that Plaintiff shall file an Amended Complaint no later than June 7, 2026.

Dated: May 7, 2026

TREVOR N. McFADDEN
United States District Judge

---

[2] In her opposition, Yang also asks for "targeted early discovery . . . to identify Doe officers and develop the Monell record." Pl.'s Opp'n at 13. Not only should such a request "be made by motion," Fed. R. Civ. P. 7(b), but the Court also sees no basis to grant it on its merits. *See* Fed. R. Civ. P. 26(d)(1) (stating that "[a] party [generally] may not seek discovery from any source before the parties have conferred as required by Rule 26(f)").